GRAVES
*vs*
GRAVES.

---

## Graves *vs* Graves.

### ERROR TO THE WASHINGTON CIRCUIT.

#### *Consideration.*

JUDGE MARSHALL delivered the opinion of the Court.

THIS was an action by petition and summons, on a note exected by J. Graves to N. Graves, for $318. The defendant pleaded that he executed the note "as a promise to give the plaintiff, who was his brother, a mere gratuity, and without any good or valuable consideration whatever." To which the plaintiff replied that the note was not given to him by defendant as a mere gratuity, but because he was the brother of the defendant, and because the defendant was indebted to him, and was given for a good and valuable consideration, concluding to the country.

Upon the trial of the issue thus made between the parties, it was proved, that after the death of John Graves their father, N. Graves, who had resided in Illinois, came to Kentucky, and contended with his brothers and sisters

PET. & SUM.

*Case 55.*

*October* 26.

Case stated and issue.

The evidence in the case.

that they ought to give him something to make him equal to themselves in what they had received from their father's estate, not asserting, however, any enforcible claim or right, but contending that he was entitled, in justice, to be made equal. The father had made large advances to him while in Illinois, and therefore gave him much less than his other children, by his will; and Nathan asked contribution from the others, not as an enforcible right, but as a gratuity, which he thought justly due, because, as he said, he had not in fact received an equal share, &c. The brothers and sisters agreed to make him equal to themselves. And accordingly, William Graves, a brother, gave him a negro girl estimated to be worth $318; Felix Graves, a brother, executed his note to him for $318, and paid it; Allen Mays, a brother-in-law, did the same; and the note now in question was executed by the defendant on the same account. The amount for which the notes were given, was fixed by reference to the value of the slave given by William Graves, without any calculation to ascertain the precise deficiency in the share received by Nathan from his father, and as the bill of exceptions states, without any express admission, that in point of fact he had received less than they had.

Conceding, as we are inclined to do, that the fraternal

An agreement between several children of a testator to contribute to raise a fund to make one equal with the others, and the payment thereof and execution of notes therefor, is a good consideration to sustain a note given by a party to such agreement for his proportion of the sum agreed to be paid.

relation, and the love and affection properly belonging to it, would not alone be sufficient against the plea of no consideration to sustain even a written promise, and doubting as we do, whether the additional fact, that by the will of the common father, one brother had received more of his estate than the other, would furnish a valuable consideration by which the note might be upheld, we are of opinion, that in this case the note does not merely rest upon the consideration of love and affection between brother and brother, nor upon the existence of an obligation on the part of one brother to renounce the partiality, or remedy the supposed injustice of the father, by equalising the unequal distribution which he has himself made of his own estate. If, as far as these inducements are concerned, the note now in question should be deemed purely gratuitous, and without such consideration, either good or valuable, as would make it enforcible in law,

there is still an additional inducement, which, as we think, suffices to give value to the consideration, and to sustain the note.

The brothers and sisters of the plaintiff, though under no legal obligation to yield to his appeal, did, from fraternal affection, combined either with a sense of justice or a feeling of compassion, agree to contribute equally to the satisfaction of his claim upon their affection, justice or charity.  There was no mistake or deception as to the nature of his claim or of their obligation.  But voluntarily and understandingly they yielded to his request, and agreed among themselves to make equal contribution, or pay a designated sum, for the purpose of remedying wholly or in part the alledged inequality, or as might be conceded for the sake of the argument, for the purpose of enabling their brother to support his family or to go into business.  Suppose such an agreement, expressive of any of these objects, had been reduced to writing executed by the parties intending to contribute, as an agreement between themselves.  Would not the promise of each be a sufficient legal and valuable consideration for the promise of each of the others?  And if three had performed their undertakings by making payment, and the fourth refused, might they not sue him for his breach of promise, and recover either for the benefit of the party to whom the contribution was to be made, the full sum agreed to be paid by each, or for their own use, such a sum, as when divided between them would equalize, though it would reduce the contribution?  We suppose, that although the parties may have been under no obligation to enter into such an agreement, yet when actually entered into, it would of itself furnish a sufficient consideration to make it binding on each of them, and that a failure of any one to perform his undertaking, and especially after others, under the inducement furnished by his promise, had performed theirs, would be a breach, not only of moral, but of legal duty to them.  And this being so, we think it clearly follows that the notes executed by each of the parties to the person intended to receive the contribution, being based upon this agreement, and in execution of it, have in the agreement itself, a valuable considera-

tion legal and sufficient to support them. If no notes had been executed directly to the interested benificiary, and the case stood on the agreement between the intended contributors, the benificiary being a stranger to the consideration and no party to the contract, could not, perhaps, enforce it in his own name. But the notes being made payable to him, there is no question, but as to the existence of a sufficient consideration. And it is immaterial whether the consideration proceeded from him or from another for his benefit.

In the present case, it is true there was no written *The instruction which should be given upon the facts as presented in the bill of exceptions.* agreement by which the brothers and sister of the plaintiff stipulated with each other to make equal contribution. But there was a verbal agreement of the same import, carrying with it a similar obligation and a similar consideration. By the promise or agreement of the other three, William was induced to give a slave of the value of $318, in execution of his part of the agreement; and even if the mutual promises were not a sufficient consideration for each other, and if the agreement, while unexecuted by any, could not have been enforced by any, yet when one of the parties, in faith of the agreement of all, parts with his property in pursuance of it, and for the common object, an obligation, not merely moral, but at least equitable, if not legal, is imposed upon the others to perform their promise. And this obligation constitutes a valuable consideration for the notes executed by each, for securing a contribution of equal value with that made by William Graves, and especially when they admit that the contribution made by the first is not greater than is required by the agreement and its objects, and that it furnishes the proper measure for their own. It is too late, after one or more have, in fulfilment of the *common agreement*, made contribution to the common object, for the remaining one or more who may be delinquent, to say they had no interest in the common object, and no expectation of benefit from it. In this view of the law and evidence of the case, the plea of no consideration was not supported. And although it may not be technically true that the defendant executed the note because he was indebted to the plaintiff, yet it is substantially so since

he was bound by his agreement with the other contributors, to pay to him the sum for which the note was executed. Without detailing the instructions given and refused, it is sufficient to say that the case was not placed before the jury upon principles accordant with this opinion, and the verdict was contrary to the law, as arising on the facts clearly and rationally deducible from the evidence.

Wherefore, the judgment is reversed and the cause remanded for a new trial, in conformity with the principles of this opinion, and in which, should the evidence be substantially similar to that herein stated, the jury should be instructed that if they believe, from the evidence, that it was mutually agreed between the brothers and sisters of the plaintiff, or any number of them, the defendant being one, that they would contribute equally to the satisfaction of the plaintiff's claim or his wants; that one of them, in consequence of that agreement, advanced to the plaintiff a slave, and the others, and among them the defendant, on the same account, executed their notes respectively, to the plaintiff, for a sum equal to the estimated value of the slave, and that the note now in question is the one thus executed by the defendant, there was upon these facts, a sufficient valuable consideration for the note, and they must find for the plaintiff the issue formed on the first plea.

*Shuck* for plaintiff; *McHenry* for defendant.